UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

SIMONE GREGG,                                    )
                                                 )
            Plaintiff,                           )
                                                 )                    CIVIL ACTION
      v.                                         )                    NO. 21-11495-JGD
                                                 )
NORTHEASTERN UNIVERSITY, PAUL ZERNICKE,           )
MARYELLEN SHEA, DIANA FITZGERALD,                 )
ALEXIS HARDING AND BRIGID HART-MOLLOY,            )
                                                 )
            Defendants.                           )
_____)

**MEMORANDUM OF DECISION AND ORDER ON MOTION TO
DISMISS COMPLAINT AGAINST DEFENDANTS DIANA FITZGERALD AND
BRIGID HART-MOLLOY PURSUANT TO FED. R. CIV. P. 12(b)(6)**

April 20, 2022

DEIN, U.S.M.J.

## I.    INTRODUCTION

The plaintiff, Simone Gregg ("Gregg" or the "Plaintiff"), was employed as a Development

Associate in the Development Office of the defendant Northeastern University ("Northeastern"

or "the University") from October 2017 until her resignation in August 2019.  She has brought

suit[1] alleging interference with her rights under the Family and Medical Leave Act, 29 U.S.C §§

2614 *et seq.* ("FMLA"), and retaliation for exercising her FMLA rights, against Northeastern; her

direct supervisor, Paul Zernicke ("Zernicke"); members of Northeastern's Human Resources

("HR") Department, Maryellen Shea ("Shea") and Alexis Harding ("Harding"); and members of

---

[1] Suit was originally brought in state court and was removed to this court by the Defendants.  The Complaint
("Compl.") is found at Docket No. 1-1.

Northeastern's Office of University Equity and Compliance ("OUEC"), Diana Fitzgerald

("Fitzgerald") and Brigid Hart-Molloy ("Hart-Molloy"), who investigated her complaints (Compl.

at Counts One & Two).  She has also alleged that defendants Zernicke, Harding, Fitzgerald, and

Shea are liable for intentional interference with contractual/advantageous relations, *to wit*, her

employment with Northeastern (Compl. at Count Three).

This matter is before the court on the "Defendants Diana Fitzgerald and Brigid Hart-Molloy's

Motion to Dismiss" brought pursuant to Fed. R. Civ. P. 12(b)(6).  (Docket No. 19).  Fitzgerald and

Hart-Molloy have moved to dismiss Counts One and Two on the basis that, as investigators with

OUEC, they did not have "sufficient control" over the plaintiff to be considered employers

under the FMLA, and therefore cannot be held personally liable for violating that Act.

Additionally, Fitzgerald has moved to dismiss Count Three for failure to state a claim of

intentional interference because the facts alleged do not support a reasonable inference that

Fitzgerald intentionally interfered with the Plaintiff's employment.  In response, the Plaintiff

argues that it is reasonable to infer that Fitzgerald and Hart-Molloy serve in positions of "high

authority" and therefore can be held individually liable for FMLA violations and interference

with contractual/advantageous relations.  She further argues that the allegations of the

Complaint are sufficient to state a claim.

After consideration of the parties' written submissions, oral argument, and for the reasons

detailed below, Fitzgerald's and Hart-Molloy's motion to dismiss is ALLOWED, except that the

Complaint will be dismissed without prejudice. [2]

---

[2] While the court is somewhat skeptical that the Plaintiff can state a claim of individual liability against these
Defendants, the record is not conclusive on this point.  Consequently, the Plaintiff will be given the opportunity to
seek permission to amend her Complaint if she believes the facts so warrant.  See In re Fresenius

[2]

## II. **STATEMENT OF FACTS**

The Plaintiff began working at Northeastern University as a Development Associate in the

Development Office in October 2017. (Compl. ¶ 10)  During her employment, the Plaintiff

required both long-term and intermittent leave under the FMLA due to a chronic medical

condition. (Id. ¶ 11).  The Plaintiff alleges that her supervisor, Zernicke, interfered with her

ability to take FMLA leave, retaliated against her for using FMLA leave time, and interfered with

her employment with Northeastern by subjecting her to unfair treatment, depriving her of

professional development opportunities, interfering with her pay, and inappropriately

questioning her regarding her private medical condition, among other allegations. (Id. ¶¶ 172,

175, 179).  During this time the Plaintiff attempted to reach out to HR for assistance with FMLA

matters and her ongoing conflict with Zernicke. (Id. ¶¶ 13–15, 39–40, 43–44, 58–62, 64, 71–72,

76–80, 95–96, 101, 104–107, 109, 117, 127, 132–134, 162).  This included communicating with

HR Benefits Specialist Shea, and HR Business Partner Harding, whose actions ultimately did not

satisfy Gregg's concerns. (Id.).  The Plaintiff alleges that during this time, instead of helping her,

Harding and Shea interfered with her rights under the FMLA, retaliated against the Plaintiff for

her use of FMLA leave, and intentionally interfered with the Plaintiff's employment at

Northeastern. (Id. ¶¶  172, 175, 179).

After the Plaintiff felt she had exhausted her options to remedy the situation with Shea and

Harding, the Plaintiff contacted OUEC on April 26 and 29, 2019. (Id. ¶ 115).  Through the help

---

Granuflo/Naturalyte Dialysate Prod. Liab. Litig., 76 F. Supp. 3d 279, 288 (D. Mass. 2015) ("Dismissal without prejudice is appropriate where the infirmity that prevents the complaint from proceeding is remediable, and it is possible for the plaintiff to re-file the complaint in a manner that would permit the alleged claims to move forward.").

of Mark Jannoni, the Plaintiff sought to commence an internal investigation of Zernicke's

alleged misconduct, as well as the actions of Shea and Harding.  (Id.).  Hart-Molloy was assigned

to investigate the Plaintiff's claims and began an informal investigation.  (Id. ¶¶ 115–116).

Hart-Molloy sent a summary of the investigation to the Plaintiff on May 23, 2019, after

concluding the informal investigation.  (Id. ¶¶ 115–125).  The Plaintiff disagreed with Hart-

Molloy's findings and objected to the fact that Hart-Molloy had not created an agreement

which would govern future conduct between the Plaintiff and Zernicke, although such an

agreement had been discussed with Gregg previously.  (Id. ¶ 125).  Gregg further alleges that

Hart-Molloy was not receptive to her proposed recommendations to improve relations among

the Plaintiff, Zernicke, and HR.  (Id. ¶¶ 121, 125).

In June 2019, the Plaintiff sought the help of OUEC again regarding her conflict with

Zernicke and HR, and requested a new investigator be assigned to her.  (Id. ¶ 149).  The Plaintiff

included new concerns in her request, including that Zernicke had given the Plaintiff a negative

reference for another position that the Plaintiff had applied for at Northeastern, and that an

anonymous previous employee of Zernicke allegedly was willing come forward to speak to the

investigator.  (Id. ¶¶ 142–146, 149).  The formal investigation was assigned to Fitzgerald who

communicated with Gregg and others about Gregg's conflicts with Zernicke.  (Id. ¶¶ 151, 153).

The investigation concluded on August 8, 2019, with Fitzgerald finding no fault with Zernicke's

conduct or treatment of the Plaintiff, nor any violation of the Plaintiff's FMLA rights by Zernicke

or HR.  (Id. ¶ 165).  The Plaintiff disagreed with the findings of the investigation, but her request

to reopen the investigation was denied by Fitzgerald.  (Id.).  The Plaintiff claims that Zernicke's

[4]

retaliation against her continued to escalate while her health deteriorated, and she was driven

to resign from her position at Northeastern on August 8, 2019.  (Id. ¶ 166).

Additional facts will be provided below as appropriate.

### III.  DISCUSSION

#### A.  Standard of Review

Defendants Fitzgerald and Hart-Molloy have moved to dismiss the claims against them with

prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state claim.  (Docket No. 19).  To

determine whether a claim will survive a motion to dismiss under 12(b)(6), the court must

accept all well-plead factual content in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

The complaint must allege enough factual content to "state a claim to relief that is plausible on

its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007)).  The court must be able to "draw the reasonable inference that the defendant is liable

for the misconduct alleged," and the inference drawn must be sufficient to move a claim

"across the line from conceivable to plausible."  Id. at 678, 680, 129 S. Ct. at 1949-51.  The court

may use its judicial experience and common sense to draw reasonable inferences.  Id. at 679,

129 S. Ct. at 1950.

For the reasons stated below, the court finds that the allegations against defendants

Fitzgerald and Hart-Molloy are not sufficient to create a plausible inference that these

defendants were employers of the Plaintiff under the FMLA, or that Fitzgerald otherwise

intentionally interfered with Gregg's employment with Northeastern.  Therefore, all counts

against Fitzgerald and Hart-Molloy will be dismissed.

### B.  Count One: FMLA Interference

In Count One of the Complaint, the Plaintiff alleges that Fitzgerald and Hart-Molloy

interfered with her ability to receive the FMLA leave to which the Plaintiff was entitled.  To

establish a prima facie case of interference with FMLA rights, the employee must show (1) "'she

was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was

entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take

leave; and (5) her employer denied her FMLA benefits to which she was entitled.'"  Favreau v.

Liberty Mutual, Inc., 451 F. Supp. 3d 150, 170 (D. Mass. 2020) (quoting Carrero-Ojeda v.

Autoridad de Energia Electrica, 755 F.3d 711, 722 n.8 (1st Cir. 2014) (additional citations

omitted)).  "The FMLA applies only to 'employers,' which includes 'any person who acts, directly

or indirectly, in the interest of an employer to any of the employees.'"  Boadi v. Center for

Human Dev., Inc., 239 F. Supp. 3d 333, 348 (D. Mass. 2017) (quoting 29 U.S.C. §§

2611(4)(A)(ii)(I), 2615(a)(1)–(2)).  While the issue has not been directly addressed by the First

Circuit, the "national trend" is toward permitting individual liability under the FMLA.  Id. and

cases cited.  Assuming, without deciding, that individual defendants can be employers under

the statute, the instant Complaint fails to allege sufficient facts to include Fitzgerald and Hart-

Molloy in this definition.

"Courts in this circuit that have discussed the question 'most commonly have applied the

parallel Fair Labor Standards Act ("FLSA") test' for individual liability" because both the FLSA

and the FMLA similarly define "employer."  Id. (quoting Brunelle v. Cytec Plastics, Inc., 225 F.

[6]

Supp. 2d 67, 82 (D. Me. 2002)).  Thus, the court is to look at "the 'economic reality' of the

totality of the circumstances bearing on whether the putative employee is economically

dependent on the alleged employer."  Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 675

(1st Cir. 1998).  See Brunelle, 225 F. Supp. 2d at 82 (using the Baystate FLSA framework to

determine whether the defendant qualified as the employer under the FMLA).  The court is

directed to look "in particular to four factors: whether the alleged employer (1) had the power

to hire and fire the employee[]; (2) supervised and controlled employee work schedules or

conditions of employment; (3) determined the rate and method of payment; and (4)

maintained employment records."  Baystate, 163 F.3d at 675.  The court may also consider

"whether the individual had personal responsibility for making decisions that contributed to the

alleged violation."  Brunelle, 225 F. Supp. 2d at 82.  "While it does not appear that all of these

factors need to be present in order to find individual liability, whether or not the supervisor

exerted some control over the employee's position and contributed to the FMLA violation are

the factors that carry the most weight."  Boadi, 239 F. Supp. 3d at 348.

There are no allegations in the Complaint which describe the job responsibilities of

defendants Fitzgerald and Hart-Molloy, and none which indicate that these defendants had

actual control over the Plaintiff's employment.  Rather, Gregg asks this court to engage in rank

speculation, and "infer" that OUEC investigators, by virtue of their positions, have wide-ranging,

unfettered authority over virtually every aspect of the terms of employment for the employees

at the University.  Thus, the Plaintiff argues:

> Because both defendants worked in investigative roles in reviewing employee
> complaints about working conditions, it can be reasonably inferred that they
> each had the power to hire and fire employees as well as have roles in
> supervising and controlling employees' work schedules and/or employees'

conditions of employment.  This is especially true here where both Defendants Molloy and Fitzgerald were charged with investigating the Plaintiff's complaints concerning Defendant Zernicke's interference with her use of FMLA leave and his alteration of the terms and conditions of her employment.  It also can be reasonably inferred that the Defendants' responsibilities also included roles in determining employees' rate of pay and maintaining employee personnel records as their investigation of the Plaintiff's concerns implicated the reduction of her pay as well as a review of her personnel records.

Pl. Opp. to Mot. to Dismiss (Docket No. 26) at 7-8.

As an initial matter, the Complaint does not include "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (additional citations omitted).  There are no facts alleged which would indicate that Fitzgerald or Hart-Molloy had the authority attributed to them by the Plaintiff.  Moreover, the inferences that the Plaintiff has asked this Court to draw, based solely on the defendants' responsibility for investigations by OUEC, are not "plausible" and the Court is being asked to engage in "mere conjecture[.]"  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (additional citations omitted).  It is not a logical inference that an employee tasked only with investigating complaints would have managerial responsibilities over employees working in different areas of the University.  The Plaintiff, having failed to allege facts from which this court can infer that Fitzgerald and Hart-Molloy exercised control over the Plaintiff's employment, has failed to state a claim against them for a violation of the FMLA.[3]

---

[3] The court also notes but does not rely on the fact that the Plaintiff was, in fact, granted the FMLA leave she requested, making it unclear what conduct of these Defendants the Plaintiff is challenging in Count One.

[8]

### C.  Count Two: FMLA Retaliation

"[T]he FMLA forbids an employer from retaliating against an employee for exercising her FMLA rights." Carrero-Ojeda, 755 F.3d at 719.  "To make out a prima facie case of FMLA retaliation, an employee must show: (1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action."  Id. (internal punctuation and citation omitted).  In addition, unlike an interference claim, "a retaliation claim requires an allegation (and, ultimately, proof) of a retaliatory motive on the part of the employer[.]"  Chacon v. Brigham & Women's Hosp., 99 F.Supp.3d 207, 214 (D. Mass. 2015).  In Count Two, the Plaintiff seeks to hold Fitzgerald and Hart-Molloy liable for retaliation under the FMLA.  For the reasons detailed above, however, the FMLA applies only to "employers" and Gregg has failed to allege sufficient facts to hold these individual defendants personally liable as her "employer" under the statute.  Therefore, the motion to dismiss Count Two is allowed.[4]

### D.  Count Three: Intentional Interference with Contractual/Advantageous Relations

In Count Three the Plaintiff alleges Fitzgerald intentionally interfered with her employment at Northeastern.  "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) [she] had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the

---

[4] Nothing herein should be interpreted as indicating that the Complaint otherwise states a claim of retaliation against Fitzgerald and Hart-Molloy.  For example, but without limitation, there are no allegations from which the factfinder can infer that Fitzgerald or Hart-Molloy acted with a retaliatory motive in connection with their determination that Gregg had failed to assert valid claims against Zernicke, Hardy or Shea.  See Chacon, 99 F. Supp. 3d at 214.

relationship, in addition to being intentional, was improper in motive or means; and (4) the

plaintiff was harmed by the defendant's actions."  Dobelle v. Flynn, 12 F. Supp. 3d 274, 296 (D.

Mass. 2014) (quoting Blackstone v. Cashman, 448 Mass. 255, 260, 860 N.E.2d 7, 12-13 (2007));

see also Draghetti v. Chmielewski, 416 Mass. 808, 816, 626 N.E.2d 862, 868 (1994) (similar

elements for claim of tortious interference with contractual relations).  In the employment

context, where "the plaintiff sues an official of the employer, [she] must satisfy an additional

element: that the supervisor acted with 'actual malice.'"  Eaton v. Town of Townsend, Civil No.

18-11824-LTS, 2022 WL 952189, *24 (D. Mass. March 30, 2022) (quoting Zimmerman v. Direct

Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001)).[5]  "Proof of actual malice requires more than

a showing of mere hostility."  Id. (citation omitted)  "To meet this demanding standard, [the

Plaintiff] must 'demonstrate that spite or malevolence, i.e., a purpose unrelated to any

legitimate corporate interest, was the controlling factor'" in engaging in the challenged

conduct.  Id. (quoting Alba v. Sampson, 44 Mass. App. Ct. 311, 315, 690 N.E.2d 1240, 1243

(1998))  Moreover, "[t]o be reasonable, an inference of malice must be based upon

probabilities rather than mere possibilities."  Alba, 44 Mass. App. Ct. at 315, 690 N.E.2d at 1243.

In the instant case, the Plaintiff relies on the proposition that "the elements underlying a

claim for unlawful retaliation may be used to show malice when a tortious interference claim is

brought against a supervisor in a loss-of-employment case."  Zimmerman, 262 F.3d at 77.  Here,

however, Gregg has not alleged sufficient facts to establish that Fitzgerald acted with

---

[5] Massachusetts requires proof of malice in order "to protect a corporate official's freedom of action."  Alba v. Sampson, 44 Mass. App. Ct. 311, 314, 690 N.E.2d 1240, 1243 (1998).  "The court adopted this limitation to allay a supervisor's fear of personal liability when the occasion arises for that supervisor to make an adverse employment decision on behalf of the employer."  Zimmerman, 262 F.3d at 76.

[10]

retaliatory motive.  See note 4, supra.  All that is alleged in the Complaint is that Fitzgerald was

an OUEC Investigator who was assigned to conduct a formal investigation of Gregg's complaints

(Compl. ¶ 151), that Gregg informed Fitzgerald about her negative interactions with Zernicke

(id. ¶ 153), that Fitzgerald's findings at the conclusion of the formal investigation did not find

any fault with Zernicke's conduct or wrongdoing on the part of HR (id. ¶ 165), and that

Fitzgerald refused to reopen the case when Gregg objected.  (Id.).  Allegations of "negligent or

improper handling" of grievances are insufficient to state a claim of wrongful interference.

Ruffino v. State Street Bank & Trust Co., 908 F. Supp. 1019, 1051 (D. Mass. 1995).  In the

absence of any allegation to suggest "that [Fitzgerald] intentionally set out to cause a rupture in

[Gregg's] ongoing relationship with [Northeastern]," or any other facts to support a finding of

malice, the claim of tortious interference against Fitzgerald must be dismissed.  Id.

## IV.  CONCLUSION

For all the reasons detailed herein, "Defendants Fitzgerald and Brigid Hart-Molloy's Motion

to Dismiss" (Docket No. 19) is ALLOWED.  The Complaint is dismissed without prejudice.


        / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge

[11]