UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
SIMONE GREGG,                       )
                                    )
       Plaintiff,                   )
                                    )
                                    )   CIVIL ACTION
   v.                               )   NO. 21-11495-JGD
                                    )
NORTHEASTERN UNIVERSITY, PAUL ZERNICKE, )
MARYELLEN SHEA, DIANA FITZGERALD,   )
ALEXIS HARDING AND BRIGID HART-MOLLOY, )
                                    )
       Defendants.                  )
_____)

**MEMORANDUM OF DECISION AND ORDER ON MOTION TO
DISMISS COMPLAINT AGAINST DEFENDANT ALEXIS HARDING**

April 20, 2022

DEIN, U.S.M.J.

## I. INTRODUCTION

    The plaintiff, Simone Gregg ("Gregg" or the "Plaintiff"), was employed as a Development Associate in the Development Office of the defendant Northeastern University ("Northeastern" or "the University") from October 2017 until her resignation in August 2019. She has brought suit[1] alleging interference with her rights under the Family and Medical Leave Act, 29 U.S.C §§ 2614 *et seq.* ("FMLA"), and retaliation for exercising her FMLA rights, against Northeastern; her direct supervisor, Paul Zernicke ("Zernicke"); members of Northeastern's Human Resources ("HR") Department, Maryellen Shea ("Shea") and Alexis Harding ("Harding"); and members of

---

[1] Suit was originally brought in state court and was removed to this court by the Defendants. The Complaint ("Compl.") is found at Docket No. 1-1.

Northeastern's Office of University Equity and Compliance ("OUEC"), Diana Fitzgerald ("Fitzgerald") and Brigid Hart-Molloy ("Hart-Molloy"), who investigated her complaints (Compl. Counts One & Two).  She has also alleged that defendants Zernicke, Harding, Fitzgerald, and Shea are liable for intentional interference with contractual/advantageous relations, *to wit*, her employment with Northeastern (Count Three).

This matter is before the court on "Defendant Alexis Harding's Motion to Dismiss" brought pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 36).  Harding has moved to dismiss Counts One and Two on the basis that, as an "HR Business Partner," she did not have "sufficient control" over the plaintiff to be considered an employer under the FMLA, and therefore cannot be held personally liable for violating that Act.  Additionally, Harding has moved to dismiss Count Three for failure to state a claim of intentional interference because the facts alleged do not support a reasonable inference that Harding intentionally interfered with the Plaintiff's employment.  In response, the Plaintiff argues that it is reasonable to infer that Harding serves in a position of "high authority" and therefore can be held individually liable for FMLA violations and interference with contractual/advantageous relations.  She further argues that the allegations of the Complaint are sufficient to state a claim.

After consideration of the parties' arguments,[2] and for the reasons detailed below, Harding's motion to dismiss is ALLOWED except that the Complaint will be dismissed without prejudice. [3]

---

[2] Harding waived oral argument because the same issues were addressed in the argument concerning defendants Fitzgerald's and Hart-Molloy's motion to dismiss.  That motion was allowed in a separate decision by this Court.

[3] While the court is somewhat skeptical that the Plaintiff can state a claim of individual liability against Harding, the record is not conclusive on this point.  Consequently, the Plaintiff will be given the opportunity to seek permission to amend her Complaint if she believes the facts so warrant.  See In re Fresenius Granuflo/Naturalyte Dialysate

[2]

## II. STATEMENT OF FACTS

The Plaintiff began working at Northeastern as a Development Associate in the Development Office in October 2017.  (Compl. ¶ 10).  During her employment, the Plaintiff required both long-term and intermittent leave under the FMLA due to a chronic medical condition.  (Id. ¶ 11).  Gregg alleges that her supervisor, Zernicke, interfered with her ability to take FMLA leave, retaliated against her for using FMLA leave time, and interfered with her employment with Northeastern by subjecting her to unfair treatment, depriving her of professional development opportunities, interfering with her pay, and inappropriately questioning her regarding her private medical condition, among other allegations.  (Id. ¶¶ 172, 175, 179).  During this time the Plaintiff attempted to reach out to Northeastern's HR Department for assistance with FMLA matters and her ongoing conflict with Zernicke.  (Id. ¶¶ 13–15, 39–40, 43–44, 58–62, 64, 71–72, 76–80, 95–96, 101, 104–107, 109, 117, 127, 132–134, 162).  This included communicating with Senior HR Benefits Specialist Shea, and HR Business Partner Harding, whose actions ultimately did not satisfy Gregg's concerns.  (Id.).  Gregg alleges that during this time, instead of helping her, Harding and Shea interfered with her rights under the FMLA, retaliated against her for her use of FMLA leave, and intentionally interfered with her employment at Northeastern.  (Id. ¶¶ 172, 175, 179).

In particular with respect to Harding, Gregg alleges that on June 8, 2018, Gregg asked Harding for her job description since she had not received one at the time she was permanently hired.  (Id. ¶ 15).  On or about August 15, 2018, Gregg was advised by Shea that Harding could

---

Prod. Liab. Litig., 76 F. Supp. 3d 279, 288 (D. Mass. 2015) ("Dismissal without prejudice is appropriate where the infirmity that prevents the complaint from proceeding is remediable, and it is possible for the plaintiff to re-file the complaint in a manner that would permit the alleged claims to move forward.").

work with her in connection with Gregg's request to work remotely.  (Id. ¶ 19).  While no further details of these interactions are provided, Gregg does allege that thereafter, during the period from August 2018 to September 4, 2018, she took FMLA leave, after which she returned to work.  (Id. ¶ 20).  Thus, it does not seem that these early interactions play a role in Gregg's claims against Harding.

When she returned from FMLA leave in September 2018, Gregg contends that her interactions with Zernicke degenerated.  (See, e.g., id. at ¶¶ 22-37, 42-53).  Allegedly, Zernicke "felt it was a problem that she had 'frequent and lengthy [medical] appointments'" and took the position that he needed to know that Gregg was available during "business hours."  (Id. ¶ 51).  Gregg alleges that she communicated with Harding on February 19 and 20, 2019, about the fact that Zernicke had requested that she share her Outlook calendar with him and complained to Harding that Zernicke wanted to know her every move and challenged her need for, and attendance at, medical appointments.  (Id. ¶¶ 51, 52, 53, 54, 58, 59, 60, 65).  Gregg wanted to know from Harding if there were any policies or procedures that required her to share her Outlook calendar with her manager.  (Id. ¶ 58).  Gregg explained to Harding that "she was also required [to] reschedule important medical appointments because of [Zernicke's] conduct."  (Id. ¶ 59).  Gregg apparently also discussed with Harding the fact that she had proposed to Zernicke that she should be able to use comp time to make up hours spent at medical appointments as other employees were permitted to do, instead of using paid sick leave, but he had told her "not to make comparisons with other people[.]"  (Id. ¶ 52).  According to Gregg, on February 20, 2019:

> Defendant Harding improperly instructed Ms. Gregg that she should not compare herself with others unless she is speaking of inequity.  Ms. Gregg said that was exactly what she

[4]

was saying.  Defendant Harding then told her that would require filing a different form and discouraged her from filing it.

(Id. ¶ 54). [4]

Apparently on this date, Gregg and Harding also discussed the fact that Zernicke had given Gregg a "mentor" which Harding "did not think . . . looked good[.]"  (Id. ¶ 61).  While Harding thought this meant that "something big" might be coming, Harding did not elaborate and "made no effort to meaningfully assist Ms. Gregg."  (Id.).

It appears that a great deal of the dissension between Gregg and Zernicke related to Gregg's absence from work for medical appointments and to attend training sessions or conferences during her lunch hour as well as during other times, and her desire to work from home as an accommodation for her medical conditions, with Zernicke taking the position that "she needed to be in the office during standard business hours."  (Id. ¶¶ 67-69, 70, 81-82, 87, 88, 92-96, 99). Zernicke accused Gregg of abusing her FMLA leave.  (Id. ¶ 112).  According to the Complaint, Gregg had numerous conversations with Shea about her conflict with Zernicke and the proper way to request and track intermittent FMLA leave of varying amounts of time.  (Id. ¶¶ 62, 64, 66, 70-71, 76-80, 101-03).  However, apart from the communications on February 19 and 20, 2019 discussed above, the only other reference to Harding in the Complaint is that sometime in March 2019 Harding requested a meeting to discuss how to enter future FMLA leave in a tracker.  (Id. ¶¶ 76-79).  There are no allegations about whether that meeting ever occurred, much less the results of any such meeting.  (See id.).

---

[4] Some of the detailed allegations lack context and are difficult to follow, but the Court is confident that the crux of Gregg's complaints is accurately described herein.

In addition to communicating with Shea, Gregg worked with a number of individuals at Northeastern to address her FMLA and disability related concerns, including Iva Caridha, apparently of HR (id. ¶ 66), John Armendariz who handled issues relating to accommodation requests under the Americans with Disabilities Act (id. ¶¶ 67-70), Omnbudsman Diane Levine (id. ¶¶ 70, 74-75), Andy Graves who is another HR Business Partner (id. ¶ 86), and Mark Jannoni, a member of Northeastern's OUEC.  (Id.).

On April 26 and 29, 2019, Gregg contacted Jannoni "to address her concerns regarding her challenges in using FMLA time and her request for an informal investigation" and was referred to defendant Hart-Molloy, an investigator with OUEC.  (Id. ¶ 115).  Gregg also discussed "her challenges with Defendants Shea and Zernicke[.]"  (Id. ¶ 116).  Hart-Molloy conducted an informal investigation and sent a summary of her investigation to the Plaintiff on May 23, 2019.  (Id. ¶¶ 115–125).  The Plaintiff disagreed with Hart-Molloy's findings.  (See id. ¶ 125).

In June 2019, the Plaintiff sought the help of OUEC again regarding her conflict with Zernicke and HR, and requested a new investigator be assigned to her.  (Id. ¶ 149).  A formal investigation was assigned to defendant Fitzgerald, who communicated with Gregg and others.  (Id. ¶¶ 151, 153).  The investigation concluded on August 8, 2019, with Fitzgerald finding no fault with Zernicke's conduct or treatment of the Plaintiff, nor any violation of the Plaintiff's FMLA rights by Zernicke or HR.  (Id. ¶ 165).  The Plaintiff disagreed with the findings of the investigation, but her request to reopen the investigation was denied.  (Id.).  The Plaintiff claims that Zernicke's retaliation against her continued to escalate while her health deteriorated, and that she was driven to resign from her position at Northeastern on August 8, 2019.  (Id. ¶ 166).

Additional facts will be provided below as appropriate.

### III. DISCUSSION
#### A. Standard of Review

Harding has moved to dismiss the claims against her with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. (Docket No. 36). To determine whether a claim will survive a motion to dismiss under 12(b)(6), the court must accept all well-plead factual content in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999). The complaint must allege enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged," and the inference drawn must be sufficient to move a claim "across the line from conceivable to plausible." Id. at 678, 680, 129 S. Ct. at 1949-51. The court may use its judicial experience and common sense to draw reasonable inferences. Id. at 679, 129 S. Ct. at 1950.

For the reasons stated below, the court finds that the allegations against Harding are not sufficient to create a plausible inference that she was an employer of the Plaintiff under the FMLA, or that Harding otherwise intentionally interfered with Gregg's employment with Northeastern. Therefore, all counts against Harding will be dismissed.

#### B. Count One: FMLA Interference

In Count One of the Complaint, Gregg alleges that Harding interfered with her ability to receive the FMLA leave to which the Plaintiff was entitled. To establish a prima facie case of interference with FMLA rights, the employee must show (1) "'she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the

FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.'" Favreau v. Liberty Mutual, Inc., 451 F. Supp. 3d 150, 170 (D. Mass. 2020) (quoting Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 722 n.8 (1st Cir. 2014) (additional citations omitted)).  "The FMLA applies only to 'employers,' which includes 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees.'" Boadi v. Center for Human Dev., Inc., 239 F. Supp. 3d 333, 348 (D. Mass. 2017) (quoting 29 U.S.C. §§ 2611(4)(A)(ii)(I), 2615(a)(1)–(2)).  While the issue has not been directly addressed by the First Circuit, the "national trend" is toward permitting individual liability under the FMLA.  Id. and cases cited.  Assuming, without deciding, that individual defendants can be employers under the statute, the instant Complaint fails to allege sufficient facts to include Harding in this definition.

"Courts in this circuit that have discussed the question 'most commonly have applied the parallel Fair Labor Standards Act ("FLSA") test' for individual liability" because both the FLSA and the FMLA similarly define "employer."  Id. (quoting Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d 67, 82 (D. Me. 2002)).  Thus, the court is to look at "the 'economic reality' of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer." Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998).  See Brunelle, 225 F. Supp. 2d at 82 (using the Baystate FLSA framework to determine whether the defendant qualified as the employer under the FMLA).  The court is directed to look "in particular to four factors: whether the alleged employer (1) had the power to hire and fire the employee[]; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4)

maintained employment records." Baystate, 163 F.3d at 675.  The court may also consider "whether the individual had personal responsibility for making decisions that contributed to the alleged violation." Brunelle, 225 F. Supp. 2d at 82.  "While it does not appear that all of these factors need to be present in order to find individual liability, whether or not the supervisor exerted some control over the employee's position and contributed to the FMLA violation are the factors that carry the most weight." Boadi, 239 F. Supp. 3d at 348.

There are no allegations in the Complaint which describe the job responsibilities of Harding, and none which indicate that she had actual control over the Plaintiff's employment.  Rather, Gregg asks this court to engage in rank speculation, and "infer" that as a member of the HR Department, "Harding had a unique opportunity and power to rectify Defendant Zernicke's misconduct."  (Pl. Opp. (Docket No. 44) at 8).  Gregg urges the Court to infer that Harding "had the power to remedy the Plaintiff's alleged FMLA violations" because she "worked in the Human Resources department and was responsible for reviewing employee FMLA applications, issues and complaints[.]"  (Id. at 9).  She further argues that "[i]t also can be reasonably inferred that the Defendants' [sic] responsibilities also included roles in determining employees' rate of pay and maintaining employee personnel records as their [sic] investigation of the Plaintiff's concerns implicated the reduction of her pay as well as a review of her personnel records."  (Id.).  However, the Complaint does not include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (additional citations omitted).  There are no facts alleged which would indicate that Harding had the authority attributed to her by the Plaintiff.  Moreover, the inferences that Gregg has asked this Court to draw, based solely on Harding's position as a

[9]

member of the HR Department, are not "plausible" and the Court is being asked to engage in "mere conjecture[.]" Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (additional citations omitted). It is not a logical inference that Harding had the ability to control any aspect of Gregg's employment.

Gregg further argues that the facts are sufficient to find that Harding "contributed to the violation of the Plaintiff's FMLA rights." (Pl. Opp. at 6). Even assuming that this would be sufficient to impose individual liability on Harding (which this Court does not find),[5] there are no such allegations in the Complaint. There are no facts asserted which would establish that Harding made any decisions about Gregg's ability to take FMLA leave. Nor are there allegations from which the court can infer that Harding's conduct contributed to Gregg's alleged harm.[6]

Finally, the cases on which Gregg relies do not compel a different result. For example, but without limitation, in Smith v. Westchester County, 769 F. Supp. 2d 448 (S.D.N.Y. 2011), suit was brought by a former corrections officer against the Department of Corrections ("DOC"), the DOC Commissioner, the Deputy Commissioner, the Warden, the Deputy Warden and the Assistant Warden. Id. at 454. The New York court expressly recognized that each individual defendant had to separately qualify as an employer to be liable under the FMLA. Id. at 475. The court denied a motion to dismiss as to the defendants who were actively involved in the

---

[5] In Brunelle, 225 F. Supp. 2d at 82, the court found that even though the defendant "arguably had personal responsibility for making decisions that contributed to the alleged denial of leave, as a front-line supervisor – at the bottom of four rungs of management – he simply was not a prominent enough player in [the defendant's company] operations to be considered an 'employer' for purposes of the FMLA." Given the absence of allegations either of Harding's personal involvement in any decisions about Gregg's FMLA leave, or of her responsibilities as an HR Business Partner, this Court does not need to reach the issue of whether involvement in the challenged decision alone would be sufficient to impose personal liability against her under the FMLA.

[6] The court also notes but does not rely on the fact that the Plaintiff was, in fact, granted the FMLA leave she requested, making it unclear what conduct of Harding the Plaintiff is challenging in Count One.

[10]

allegedly wrongful conduct by personally putting the plaintiff on attendance review for FMLA absences and then failing to remedy the situation, sending the plaintiff home for failing to obtain unnecessary medical clearance and/or denying the plaintiff's request for FMLA leave. Id. at 476.  Such defendants, according to the court, were potentially liable because they "controlled Plaintiff's rights under the FMLA or had substantial control over the aspects of Plaintiff's employment that he alleges were violated." Id.  When, however, the plaintiff failed to allege any conduct by other individual defendants that could render them liable under the FMLA, the court dismissed the complaint against those individuals. Id.  In the instant case, there are no allegations to support the conclusion that Harding had any control over whether Gregg qualified for FMLA leave or whether her requests should be approved.  Thus, dismissal of the Complaint against Harding is consistent with the court's decision in Smith.  Similarly, in Graziadio v. Culinary Instit. of Am., 817 F.3d 415 (2nd Cir. 2016), on which Gregg relies, the issue raised was whether the plaintiff's employment was improperly terminated for seeking to take FMLA leave.  The court found that there was sufficient evidence to go to the jury on the potential liability of the Director of Human Resources, who participated in the decision to terminate the plaintiff's employment, was personally responsible for making the determination as to whether FMLA leave should be granted and if the paperwork submitted was adequate, and was exclusively responsible for handling the employee's dispute and return to work. Id. at 423-24.  Under such circumstances, the court determined that there was evidence from which a rational jury could find that the defendant "exercised sufficient control over [the plaintiff's] employment to be subject to liability under the FMLA." Id. at 424.  No comparable allegations have been made with respect to Harding's responsibilities in this case.  Finally, in Mason v.

[11]

Mass. Dep't of Envir. Prot., 774 F. Supp. 2d 349 (D. Mass. 2011), suit was brought against the Commissioner of the Department of Environmental Protection ("DEP"), the Deputy Commissioner of DEP, and the DEP's General Counsel, each of whom participated in the decision to deny the plaintiff FMLA leave and terminate his employment. Id. at 367-68. Such direct involvement, coupled with the fact that these defendants "exercised a sufficient level of control, at least in regards to the power to hire and fire employees" was sufficient to state a claim of potential individual liability for violating the plaintiff's FMLA rights. Id. at 368. In the instant case, no comparable facts either as to Harding's involvement or her authority have been pleaded in Gregg's Complaint. The allegations of the instant Complaint are insufficient to state a claim against Harding for personal liability for violating the FMLA.

### C. Count Two: FMLA Retaliation

"[T]he FMLA forbids an employer from retaliating against an employee for exercising her FMLA rights." Carrero-Ojeda, 755 F.3d at 719. "To make out a prima facie case of FMLA retaliation, an employee must show: (1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." Id. (internal punctuation and citation omitted). In addition, unlike an interference claim, "a retaliation claim requires an allegation (and, ultimately, proof) of a retaliatory motive on the part of the employer[.]" Chacon v. Brigham & Women's Hosp., 99 F.Supp.3d 207, 214 (D. Mass. 2015). In Count Two, the Plaintiff seeks to hold Harding liable for retaliation under the FMLA. For the reasons detailed above, however, the FMLA applies only to "employers" and Gregg has failed to allege

[12]

sufficient facts to hold Harding personally liable as her "employer" under the statute. Therefore, the motion to dismiss Count Two is allowed.[7]

### D. Count Three: Intentional Interference with Contractual/Advantageous Relations

In Count Three the Plaintiff alleges that Harding intentionally interfered with her employment at Northeastern. "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) [she] had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Dobelle v. Flynn, 12 F. Supp. 3d 274, 296 (D. Mass. 2014) (quoting Blackstone v. Cashman, 448 Mass. 255, 260, 860 N.E.2d 7, 12-13 (2007)); see also Draghetti v. Chmielewski, 416 Mass. 808, 816, 626 N.E.2d 862, 868 (1994) (similar elements for claim of tortious interference with contractual relations). In the employment context, where "the plaintiff sues an official of the employer, [she] must satisfy an additional element: that the supervisor acted with 'actual malice.'" Eaton v. Town of Townsend, Civil No. 18-11824-LTS, 2022 WL 952189, *24 (D. Mass. March 30, 2022) (quoting Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001)).[8] "Proof of actual

---

[7] Nothing herein should be interpreted as indicating that the Complaint otherwise states a claim of retaliation against Harding. For example, but without limitation, there are no allegations from which a factfinder could infer that Harding acted with a retaliatory motive in her interactions with Gregg. See Chacon, 99 F. Supp. 3d at 214.

[8] Massachusetts requires proof of malice in order "to protect a corporate official's freedom of action." Alba v. Sampson, 44 Mass. App. Ct. 311, 314, 690 N.E.2d 1240, 1243 (1998). "The court adopted this limitation to allay a supervisor's fear of personal liability when the occasion arises for that supervisor to make an adverse employment decision on behalf of the employer." Zimmerman, 262 F.3d at 76.

[13]

malice requires more than a showing of mere hostility." Id. (citation omitted)  "To meet this demanding standard, [the Plaintiff] must 'demonstrate that spite or malevolence, i.e., a purpose unrelated to any legitimate corporate interest, was the controlling factor'" in engaging in the challenged conduct.  Id. (quoting Alba v. Sampson, 44 Mass. App. Ct. 311, 315, 690 N.E.2d 1240, 1243 (1998))  Moreover, "[t]o be reasonable, an inference of malice must be based upon probabilities rather than mere possibilities."  Alba, 44 Mass. App. Ct. at 315, 690 N.E.2d at 1243.

In the instant case, the Plaintiff relies on the proposition that "the elements underlying a claim for unlawful retaliation may be used to show malice when a tortious interference claim is brought against a supervisor in a loss-of-employment case." Zimmerman, 262 F.3d at 77.  Here, however, Gregg has not alleged sufficient facts to establish that Harding acted with a retaliatory motive.  See note 7, supra.  Gregg contends that the Complaint alleges that Harding interfered with Gregg's relationship with Northeastern "by failing to assist the Plaintiff with Defendant Zernicke's mistreatment of her, failing to process the Plaintiff's complaints, and failing to remedy this misconduct, ultimately resulting in the end of her employment with Defendant Northeastern."  (Pl. Opp. at 12).  Not only does this argument overstate the allegations of the Complaint, but they are also insufficient to state a claim of tortious interference.  Allegations of "negligent or improper handling" of grievances are insufficient to state a claim of wrongful interference.  Ruffino v. State Street Bank & Trust Co., 908 F. Supp. 1019, 1051 (D. Mass. 1995).  In the absence of any allegation to suggest Harding had any "spiteful, malignant purpose" in her interactions with Gregg, or any plausibly allegation that Harding acted with an "actionable improper motive" that was "unrelated to a legitimate corporate interest" the claim of tortious interference fails.  Dick v. Wood Hole Oceanographic Instit., No. 21-cv-10007-DJC, 2021 WL

3146049, at *8 (D. Mass. July 26, 2021) (quoting Sherman v. Clear Channel Outdoor, Inc., 889 F. Supp. 2d 168, 176 (D. Mass. 2012) (internal punctuation omitted)).  Accord Brown v. Suffolk University, Civil Action No. 19-40062-DHH, 2021 WL 2785047, at *7 (D. Mass. Mar. 31, 2021).[9]

### IV. CONCLUSION

For all the reasons detailed herein, "Defendant Alexis Harding's Motion to Dismiss" (Docket No. 36) is ALLOWED.  The Complaint is dismissed without prejudice.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[9] Brothers v. Town of Millbury, No. 14-10122-TSH, 2014 WL 4102436 (D. Mass. Aug. 14, 2014), on which Gregg relies, supports this Court's conclusion.  There the court refused to dismiss a claim of tortious interference with advantageous relations where there were factual allegations supporting a finding that the defendants conducted a "twisted investigation" of the plaintiff, made false charges, and destroyed evidence, and the court concluded that such allegations were "sufficient to show conduct done with the malicious intent to interfere with an advantageous relationship with [the plaintiff's] employer. Id. at *9.  However, the court dismissed claims against another defendant in the absence of any allegation that he acted with malice. Id.  Here there are no allegations against Harding that would support a finding a malice.